IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LONNIE WHITSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO.:  CIV-17-1301-F |
| | ) | |
| (1) SM ENERGY, a Delaware Corporation, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| (2) DAVID MICHAEL GREENE, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now, Lonnie Whitson , (hereinafter referred to as "Whitson" or "Plaintiff"), a resident of Clinton Oklahoma, geographically located in Custer County and Washita County, and situated within the United States District Court for the Western District of Oklahoma, by and through his attorney, Guinise M. Marshall, and brings this action against the named Defendants, seeking redress for personal injury and for violation of Title VII of the Civil Rights Act of 1964, civil conspiracy, and  the laws of the State of Oklahoma for his cause of action against Defendants alleges and states as follows:

## PARTY PLAINTIFF

1. At all times mentioned, Plaintiff, Lonnie Whitson Meyers was and now is a resident of the City of Clinton, geographically located in Custer and Washita Counties, State of Oklahoma.  At the time the cause of action arose Whitson was employed by SM Energy (hereinafter referred to as "SME").   Whitson was terminated from his employment on May  22, 2017.

## PARTIES DEFENDANT

2.   The Defendants to the action are enumerated herein as follows:

(1) SM Energy is a Delaware Corporation, and is an American Petroleum and Natural

Gas exploration company headquartered in Denver, Colorado.  SM Energy may

be served at 1775 Sherman Street, Suite 1200, Denver, Colorado 80230.

(2) David Michael Green Jr., is an individual and was at all times an agent of SM

Energy and was a supervisor of Plaintiff at all relevant times during this cause of

action. David Michael Greene, Jr. may be served at 1603 Candleston Lane, Katy

Texas  77450.

## JURISDICTION AND VENUE

3.   Plaintiff invokes the diversity jurisdiction of this Court pursuant to 28 U.S.C. Section

1332, as the parties are diverse in citizenship in that Plaintiff is a resident of

Oklahoma, Defendant David Greene is a resident of the State of Texas and SM

Corporation has its principal place of business in Denver in the State of Colorado.

Plaintiff also invokes the supplemental Jurisdiction of 28 U.S. C. Section 1367 in that

the case involves claim of tort and personal injury that are governed by the laws of

the State of Oklahoma.  Plaintiff invokes the federal question jurisdiction of this

Court pursuant to 28 U.S.C. Section 1331 as amended, specifically, Title VII of the

Civil Rights Act 1964, in that Plaintiff has exhausted his administrative remedies in

the Unites States Equal Employment Opportunity Commission and expects that a

Notice of Right to Sue will be issued by the Commission on December 4, 2017.

Plaintiff will amend his Complaint upon the issuance of same to include the specific

causes of action.  Finally, Plaintiff invokes the federal question jurisdiction of 42

U.S.C. Section 1985.

4. Venue is proper in the Western District of Oklahoma pursuant to 28 U.S. C. Section 1391 in that Plaintiff is a resident of the Western District of Oklahoma.

## OPERATIVE FACT ALLEGATIONS

5. Lonnie Whitson was employed by SM Energy in July 2004.   He met David Greene in July 2015.  David Greene was the Production Manager at the Catarina location. David Greene was also the "favorite son" of the Director of Operations for SM for the Southern District of the United States.  The first encounter was a harbinger of the vile, oppressive and sexually reprobate environment which dominated the work environment at all levels.  On this first encounter, David Greene was coming out of the bathroom, where there was no paper towels to dry his hands.  He emerged from the bathroom screaming obscenities at the secretaries and all other employees to hear that there were no paper towels to wipe either his ass or his balls.   The rant included references to masturbation and a string of curse words which were clearly not welcome or expected in the workplace.   After witnessing the rant, Whitson approached Greene and engaged him in conversation and advised him that his behavior was not welcome or appropriate in the workplace and that he should not do that again.  Lonnie Whitson advised David Greene that such language was especially inappropriate and unacceptable in the presence of women.  David Greene replied that Lonnie Whitson should "mind your own business".

6. Later that day, Whitson discovered from the secretaries and other staff members that David Greene was the favorite son of the Director of Operations and that this behavior from David Greene happened on a daily basis.  Lonnie Whitson believed from that conversation that the secretaries must have been exaggerating, in that in his

experience, that behavior would not have been tolerated even once.  Lonnie Whitson
was wrong.

7.   Whitson worked two weeks on and one week off.  On the weeks that David Greene's
schedule coincided with Whitson's, every verbal encounter was vile, filled with
references of oral sex, masturbation, anal sex, demonstrations of David Greene
grabbing his own crotch and simulating masturbation in the presence of the
employees.  Lonnie Whitson's visit to hell was to come at the Christmas party of
December 2015.

8.   The Christmas Party was a company sponsored event and it was encouraged and
expected that all secretarial staff, receptionists, production employees and production
supervisors would attend.  More than 150 employees and their wives attended.
Several of the attendees were members of human resources department, many of the
attendees were senior in rank to both David Greene and to Lonnie Whitson.

9.   David Greene circulated about the room with his usual references to masturbation,
cunnilingus and grabbing his crotch and humping motions to simulate sexual acts.
The spouses of the attendees were not spared the depravation.   The night started with
a recognition of one of the employees' birthdays.  David Greene called the employee
up to the stage and placed a chair in the middle of the dance floor.  As the guests sang
happy birthday, David Greene performed a lap dance, complete with placing his
crotch in the face of the employee and grinding to emulate oral sex.  The employee
sat there humiliated and powerless, after all, this was the Production Manager and the
"favorite son" of the Director of Operations and David Green knew that he could act

with impunity.   For Lonnie Whitson, he was just beginning his descent into employer sponsored hell.

10. As the party progressed, Lonnie Whitson began to circulate in order to meet the spouses of his co-workers.  As Whitson was passing by the dance floor, David Greene tackled Whitson from behind and knocked him head first to the floor. David Greene then mounted Lonnie Whitson crotch to crotch and began to sexually and physically assault Lonnie Whitson  as he was recovering from fall to the floor.   There on the dance floor, open and notorious to all who were in attendance, David Greene sexually assaulted Lonnie Whitson, and no supervisor, no employee and no guest intervened, for all knew and feared the complete and total depravity of David Greene and the complete and total complicity with SM Energy in which David acted.  This treatment was the price for employment at SM Energy and every guest at the Christmas party knew it and was traumatized by it.

11. There sexually hostile environment was so much part and parcel of the employment contract with SM Energy, though the supervisors, human resources personnel and management personnel clearly witnessed a criminal act, each knew that their silence and complicity, was the price for continued employment at SM Energy.  This conspiracy prevented Whitson's to access the court system and prevented Whitson from his right of access to any court,  administrative body or tribunal system to complain of his violation.

12. The assault by Greene caused Whitson to be stunned initially.  When Greene to Whitson to the floor, Whitson was initially stunned and disoriented.  When Whitson regained his full consciousness, he awoke to the breath of Greene blowing in his face,

nose to nose, and Greene performing a simulated sex act on him to the point of Greene's ejaculation.

13. Whitson returned to work, with thoughts of suicide, back pain, recurring headaches and in extreme depression.  The events of the Christmas party haunted Whitson daily and was the continual and continuous conversation throughout the company; and yet, David Greene retained his employment and Greene and SM Energy continued in the creation and maintenance of a hostile work environment.

14. Since Whitson's Greene's schedule overlapped for two weeks a month, during those times, Whitson would not sleep, could not eat and was hypervigilant whenever Greene approached him.  Because of the encounter with Greene,  Whitson was in a constant state of stress, physical exhaustion and mental exhaustion, Whitson suffered a mini- stroke on December 22, 2016.  While Whitson was in the hospital, Greene continued his stalking and harassment by visiting him in the hospital and making belittling comments.

15. On January 11, 2017,  a new Operations Manager, James Erlander, visited the Catarina location.  The first question that Erlander asked Whitson was "what happened at the Christmas party?"  Still one full year later, the events of the assault were fodder for conversation, however, at no time did any employee, agent, supervisor, owner or other person,  conduct an investigation into the matter.

16. At no time did any employee, agent, supervisor, manager or other person separate the working hours for David Greene so that Greene and Whitson would be segregated, and Whitson would not be subjected to further harassment and intimidation by Greene.

17. On January 17, 2017, Whitson had a complete physical and mental breakdown and contacted the Employee Assistance Program to seek assistance.  Still SM Energy refused to investigate of the matter and continued to allow Greene to be employed.

18. Because of the incidents and the hostile environment, Whitson suffered and continues to suffer from Post-Traumatic Stress Disorder, anxiety attacks, panic attacks, sleeplessness, weight gain, weight loss, mood swings, transient ischemic attacks, confusion, inability to concentrate.

19. While on disability leave, SM Energy terminated Whitson's employment.  Whitson had obtained a return to work date from his physician; however, despite the release date noted, SM Energy terminated Whitson.  As a result of the termination, Whitson suffered losses in the area of salary of more than five-hundred-thousand dollars annually; stock options and stock participation in the amount of five-million-dollars; continuing physical effects of the mental strain which has physical manifestations of increased heart palpitations, inability to concentrate, inability to maintain a constant blood pressure, night terrors, uncontrolled sweating, inability to make a decision, inability to maintain marital relations.

## CAUSES OF ACTION

## ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As to both defendants:  To establish a prima facie case of intentional infliction of emotional distress in Oklahoma, a plaintiff must demonstrate: (1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe. One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional

distress to another is subject to liability for such emotional distress.  The court, in the first

instance, must determine whether the defendant's conduct may reasonably be regarded so

extreme and outrageous as to permit recovery.    Liability has been found only where the conduct

has been so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.  The conduct must be such that, upon hearing of it, a reasonable member of the

community might exclaim "outrageous!"

## ACTION FOR NEGLIGENT SUPERVISION

As to SM Energy:  The essential elements of a negligence claim are: (1) a duty owed by

defendant to protect plaintiff from injury, (2) a failure to properly exercise or perform that duty,

and (3) injuries to plaintiff proximately caused by defendant's failure to exercise his duty of

care.. Duty is the threshold question in any negligence action.   The above events describe the

failure of SM Energy to supervise the actions of its employees, agents and servants.

## NEGLIGENT HIRING

As to SM Energy:  Employers may be held liable for negligence in hiring, supervising or

retaining an employee. In such instances, recovery is sought for the employer's negligence.  The

claim is based on an employee's harm to a third party through employment. An employer is

found liable, if--at the critical time of the tortious incident--, the employer had reason to believe

that the person would create an undue risk of harm to others. Employers are held liable for their

prior knowledge of the servant's propensity to commit the very harm for which damages are

sought.   The critical element for recovery is the employer's prior knowledge of the servant's

propensities to create the specific danger resulting in damage.

## NEGLIGENT RETENTION

As to SM Energy:  To prove a claim for negligent retention, plaintiff must present evidence that [the employer] knew or should have known that [the offending employee] had a history of harassment.  Liability is for negligently placing an employee with known dangerous propensities, or dangerous propensities which could have been discovered by a reasonable investigation, in a position where it is foreseeable that he could injure the plaintiff in the course of the work. The duty to use reasonable care in hiring or retaining employees arises because it is foreseeable that the employee, in carrying out his employment, may pose an unreasonable risk of injury to others.

## NEGLIGENT INVESTIGATION

As to SM Energy:   The employer had a duty to undertake an investigation in order to meet their obligations under common law and under the anti-discrimination laws.  The general duty of any employer who either knows or should know about a discrimination, harassment, threat, or safety problem faced by an employee is to take prompt and effective remedial action to put an end to the problem. In order to know what action to take, or to find out whether action is even necessary, the employer has to investigate the situation and ascertain the facts. Employers that fail to investigate such situations usually lose any claims or lawsuits brought by the employee in response to the problem.

## TORTIOUS INTERFERENCE WITH EMPLOYMENT CONRACT

As to defendant David Greene:  Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately

caused damage. Additionally, the claim is viable only if the interferor is not a party to the contract or business relationship.

## CIVIL CONSPIRACY TO VIOLATE THE CIVIL RIGHTS OF WHITSON

As to all Defendants and to unnamed co-conspirators:  The Supreme Court has adjudicated the ability for a plaintiff to sue at common law for civil conspiracy in noting that a conspiracy consists of an unlawful combination of two or more persons to do that which is contrary to law, or to do that which is wrongful and harmful towards another person.  It may be punished criminally by indictment, or civilly by an action on the case in the nature of conspiracy if damage has been occasioned to the person against whom it is directed. It may also consist of any unlawful combination to carry out an object not in itself unlawful by unlawful means.

## RESERVATION OF ACTIONS UNDER TITLE VII

Whitson reverses the right to incorporate actions arising under Title VII of the Civil Rights Act of 1964, upon the receipt of the Notice of Right to Sue.  Whitson was advised that the United States Equal Employment Opportunity Commission would issue a Notice of Right to Sue on the date of this filing.  The incidents described herein also comprise the facts upon which the Title VII violations rest.

## PRAYER FOR RELIEF

Wherefore premises considered, Whitson for judgment against the defendants, jointly and severally as follows:

(1) That the Defendants and each of them severally and individually, be ordered to make Plaintiff whole by providing all of the remedies and relief authorized by in the amount not less than ten million dollars as actual damages

10

(2) That Defendants and each of them severally and individually, be ordered to pay

punitive damages in the amount of not less than ten million dollars.  That the

Defendants and each of them jointly and severally,  be ordered to pay Plaintiff

compensatory damages pursuant to 42 U.S. C. Section 1985 in an amount to be

determined by the jury at the time of trial;

(3) That Defendants and each of them, jointly and severally,  be ordered to pay Plaintiff's

costs including expert witness fees and a reasonable attorney fee pursuant to 42

U.S.C. Section 1988;

(4) For such other and further make whole relief as the Court deems just and proper.

Respectfully submitted,

/s/Guinise M. Marshall
GUINISE M. MARSHALL, OBA#13902
222 N.W. 13th Street,
Oklahoma City, OK  73103
(405) 601-2174 Phone
(405) 523-2108  Fax


JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED